# IN THE COURT OF APPEALS 09/17/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 93-KA-00683 COA


**ROBERT SIMMONS, JR.**

**APPELLANT**

**v.**

**STATE OF MISSISSIPPI**

**APPELLEE**


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. JOHN LESLIE HATCHER

COURT FROM WHICH APPEALED: COAHOMA COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

CHARLES E. WEBSTER

ATTORNEY FOR APPELLEE:

OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER

DISTRICT ATTORNEY: LAURENCE Y. MELLEN

NATURE OF THE CASE: CRIMINAL-RAPE (CARNAL KNOWLEDGE OF FEMALE UNDER THE AGE OF FOURTEEN)

TRIAL COURT DISPOSITION: DEFENDANT SIMMONS CONVICTED OF THE RAPE OF A FEMALE UNDER THE AGE OF FOURTEEN AND SENTENCED TO SERVE A TERM OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS.

BEFORE BRIDGES, P.J., BARBER, AND McMILLIN, JJ.

McMILLIN, J., FOR THE COURT:

Robert Simmons, Jr. appeals the judgment of the Coahoma County Circuit Court finding him guilty of the rape and carnal knowledge of a female under the age of fourteen and the resulting sentence of life in the custody of the Mississippi Department of Corrections. On appeal, Simmons assigns the following as error: (1) the lower court's failure to grant a continuance based on discovery violations by the State; (2) the lower court's error in allowing a handwritten note by the alleged victim into evidence as an "excited utterance" under Mississippi Rule of Evidence 803(2); (3) the lower court's decision to allow the introduction of statements by the alleged victim to nonmedical witnesses and statements made to medical witnesses, but not for a medical purpose; and (4) the lower court's ruling allowing the six-year-old sister of the alleged victim to testify.

We find that the reasons advanced by Simmons for reversal of his conviction are not such as would require this Court to disturb the jury verdict, and we, therefore, affirm.

I.

FACTS

On November 23, 1992, during her third period class, C.W. delivered a note to the school secretary which read, "These are the things he did to me: he had rape me and child abuse me." Upon reading the note, the secretary Ms. Youngblood immediately discussed the matter with the school principal, and the school nurse, Ms. Louise Tolliver, was notified promptly.

In an interview with the school nurse, C.W. stated that her mother's boyfriend, Robert Simmons (Duke), had raped her early that morning around 6:15 A.M. after her mother left for work. C.W. also told the nurses that this was not the first incidence of abuse. Although Nurse Tolliver did not conduct a medical exam on site due to lack of proper facilities, she referred C.W. to the Department of Human Services for investigation of the rape.

Simmons was subsequently indicted, tried, and convicted for the rape of a female under the age of fourteen and sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. It is from that conviction and sentence from which Simmons brings this appeal.

Additional facts pertinent to the assigned errors will be disclosed as necessary.

II.

Failure to Grant Continuance

Defense counsel filed a motion for continuance four days prior to trial based on two grounds: (1) late discovery furnished by the State and (2) lack of preparedness of defense to go forward with the trial at that time. Simmons cited as support for his motion that the State had violated the rules of discovery in more than one instance. This case was set for trial on February 1, 1993, and five days prior to trial, the State supplied to defense counsel a list of seven previously undisclosed witnesses. In addition, three days prior to trial, defense counsel received from the State crime lab certain serological test results and hair samplings. Counsel for Simmons further argues to this Court that his involvement in several other trials during the weeks prior to this trial hindered his ability to meet with the additional witnesses, review the additional information from the test results, and prepare the defense accordingly, and that the denial of a continuance effectively denied Simmons the effective assistance of counsel.

The granting or denying of a motion for continuance is left to the broad discretion of the lower court, and absent manifest injustice from a denial of the continuance, this Court will not reverse that decision. *Lambert v. State,* 654 So. 2d 17, 22 (Miss. 1995). "A denial of the continuance shall not be ground for reversal unless the supreme court shall be satisfied that injustice resulted therefrom." *Id.* (quoting Miss. Code Ann. § 99-15-29 (1972)).

In the present case, Simmons asserts that the State failed to timely disclose a list of seven additional witnesses until the Wednesday prior to the trial date of Monday. The trial judge stated the following, in refusing to grant the continuance, "I expect that I will be very liberal with Mr. Webster in giving him the time necessary, in view of the lateness of the crime lab data. And we may be late starting this case but I want the State to give him every chance to talk to these people and make everything available to him." In addition, the trial judge announced his intention to "accommodate defense counsel in every way" in interviewing witnesses, even if work had to be duplicated.

Ultimately, the only witness on the newly furnished list to testify was Shirley Youngblood, the school secretary whose name was referenced in the police reports. Further, in regard to this list of witnesses, and particularly to Youngblood who was allowed to testify, Simmons has failed to note any prejudice or resulting injustice sufficient to warrant reversal.

Simmons also argues that the State failed to timely disclose reports in regard to the hair samples and serological testing from the State crime lab. The record indicates that Simmons received the lab reports about the same time as they were furnished to the State. The State argues that they supplemented as soon as possible, noting that the speed with which the crime lab analyzes evidence is out of their control. The State did not call any of the witnesses from the State crime lab and did not present the crime lab reports into evidence, which is directly in line with the procedure set out in *Box v. State* for a Rule 4.06 violation. *See, e.g., Box v. State,* 437 So. 2d 19, 22-26 (Miss. 1983) (Robertson, J., specially concurring) (where the court held that if defendant requests a continuance, State may choose to proceed with trial and forego using undisclosed evidence). In fact, the reports and testimony of the crime lab experts were presented by the defendant, who made the tactical decision to present this evidence. Again, Simmons failed to advance any reversible injustice which resulted but merely argues that he would have been able to ward off inconsistencies in the testimony

of two experts.

Upon review of the record, we can find no manifest injustice which is sufficient to warrant reversal in the denial of the continuance. Simmons has not shown any prejudice resulting from the failure to grant a continuance, and we, therefore, affirm the decision of the lower court.

III.

Testimony Regarding the Handwritten Note

Simmons further assigns as error the trial court's failure to exclude from evidence the handwritten note authored by C.W., which read, "These are the things he did to me: he had rape me and child abuse me." The note, which was introduced into evidence as an excited utterance under Mississippi Rule of Evidence 803(2), was also the subject of the testimony of the school nurse, Ms. Tolliver; the school secretary, Ms. Youngblood; and C.W.

Simmons argues that the note lacks the element of spontaneity because the alleged rape occurred at 6:15 A.M., and the note was not written until the third period of the school morning, some three or four hours later. Therefore, he asserts that the note does not fall under the "excited utterance" exception and was inadmissible hearsay.

The State, however, counters that C.W. was not questioned or urged to inform anyone as to what occurred at her home that morning, but instead arrived at school and attempted to speak to the school secretary as soon as possible. However, according to the testimony of Ms. Youngblood, she was unable to talk to C.W. at that time due to the early morning rush in the bookstore. Youngblood told C.W. to come back later to talk. Apparently, C.W. waited until third period, when she did not personally speak to Youngblood upon her return to the office, but, instead, wrote the note which is the subject of this discussion. The State argues that this statement was clearly spontaneous and without indication of manufacture, and thus is admissible under Rule 803(2) as an excited utterance. In addition, the State urges that this statement is also admissible as a "fresh complaint" by a rape victim at the first opportunity available.

Rule 803(2) of the Mississippi Rules of Evidence provides an an exception to the general rule excluding hearsay for statements made which relate "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." M.R.E. 803(2). "[T]he essential ingredient here is spontaneity. With respect to the time element, the issue is the duration of the excited state. This, depending on the exact circumstances of a case, can vary greatly." M.R.E. 803(2) cmt. The determination of whether evidence was spontaneous and therefore is admissible under the "excited utterance" exception rests within the sound discretion of the trial judge, and this Court will not reverse that decision absent an abuse of discretion. *Davis v. State,* 611 So. 2d 906, 913 (Miss. 1992).

In the present case, C.W. arrived at school and went to the school secretary, who was unable to talk to her at that time. As directed to do by the secretary, C.W. went to class, apparently to wait for a better time to speak with the secretary. During her third period class without questioning or

encouragement from an adult, C.W. wrote the note indicating what had happened before she left home for school that morning. We do not agree with Simmons' assertion that waiting from 6:15 A.M. until third period to write the note brought this out of the ambit of spontaneity required under Rule 803(2). It was clearly in the lower court's discretion to determine that C.W. was still in an excited state when she wrote the note to Youngblood, especially since that was the first adult with whom C.W. had trusted to voluntarily speak when she arrived at school and to whom she had ultimately directed the note. *See, e.g., Baine v. State,* 606 So. 2d 1076, 1079 (Miss. 1992) (where the court held that the weight of authority "supports the characterization as an excited utterance of a child's allegations of abuse volunteered within hours after the abuse allegedly occurred"); *In re Interest of C.B.,* 574 So. 2d 1369, 1372 (Miss. 1990) (where the court held that a child's statements to her mother on the same day that the sexual abuse occurred could have been admissible as an excited utterance if not given in response to mother's questions). The fact that she did not tell her actual first, second, and third period teachers seems to indicate that she trusted Youngblood and intended to return to speak with her when the opportunity presented itself. Therefore, we find that the trial judge was well within the discretion afforded him and affirm his decision to allow this note into evidence under Rule 803(2).

IV.

Statements of C.W. to Witnesses

C.W. made statements concerning the incident to four different persons: her six-year-old sister, L.W.; Ms. Youngblood, the school secretary; Ms. Tolliver, the school nurse; and Ms. Sophie Beam, a friend of C.W.'s mother. Simmons argues that the trial court erred in allowing the testimony concerning statements made by C.W. to nonmedical witnesses, such as her sister, the school secretary, and Ms. Beam, the family friend, and that the court further erred in allowing testimony by the school nurse Ms. Tolliver, regarding statements made during her investigation of the event, which did not include a physical exam.

Simmons centers his discussion solely around the testimony of Ms. Tolliver and cites authority for the exclusion of her testimony only. Therefore, the issue of admissibility of Tolliver's testimony will be addressed first. Simmons argues that statements made by C.W. to Tolliver were inadmissible hearsay and did not fall under Rule 803(4) as an exception for statements made to medical personnel for the purpose of medical treatment.

Mississippi Rule of Evidence 803(4) provides:

> Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause of external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the proffered statements were made under circumstances substantially indicating their trustworthiness. *For purposes of this rule, the term "medical refers to emotional and mental health as well as physical health.*

M.R.E. 803(4) (emphasis supplied).

"[S]tatements by a child victim relied upon by a treating physician identifying the perpetrator as a member of the child's household are admissible in child abuse cases." *Johnson v. State,* 666 So. 2d 784, 795 (Miss. 1995) (citing *Doe v. Doe,* 644 So. 2d 1199, 1206 (Miss. 1994)). In order for such statements to be admissible under Rule 803(4), a two-part test must be met: "[T]he declarant's motive in making the statement must be consistent with the purposes of promoting treatment; and . . . the content of the statement must be such as is reasonably relied on by a physician in treatment." *Doe v. Doe,* 644 So. 2d 1199, 1205-06 (Miss. 1994) (citations omitted). In cases where the child is assaulted by a member of the child's immediate household, as in the present case, "an important part of treatment is the prevention of further sexual abuse as well as the treatment of emotional and psychological injuries." *Johnson,* 666 So. 2d at 795 (citations omitted).

Ms. Tolliver, the nurse, was notified as soon as the note was received from C.W., and she arrived shortly thereafter at the school to conduct an interview. Although she did not have the facilities available to conduct a physical examination, the interview was conducted for the purpose of determining whether to refer C.W.'s case to the Department of Human Services, as is required by law. *See* Miss. Code Ann. § 43-21-353 (1972). The Department of Human Services, in turn, is responsible for taking the appropriate steps to secure medical attention and remedying the home situation. Ms. Tolliver testified that she intended for the information received during her interview with C.W. to be used by medical authorities if relevant to their investigation. C.W.'s motive in making the accusations against a member of her household, her mother's live-in boyfriend, was not inconsistent with that of a motive for promoting treatment, and the statements were relied on by Nurse Tolliver in treating C.W., by taking the steps required under law to remedy the situation both medically, mentally, and emotionally. Therefore, the admission of such statements was not error. *See, e.g., Eakes v. State,* 665 So. 2d 852, 866 (Miss. 1995); *Doe,* 644 So. 2d at 1206; *Mitchell v. State,* 539 So. 2d 1366, 1370 (Miss. 1989) (citations omitted).

The trial court also allowed the testimony of L.W., the six-year-old sister of C.W., as to statements made while the children were on the school bus the morning of the incident. These statements were clearly made while C.W. was under the stress of the event and therefore qualify as excited utterances, admissible under Rule 803(2) as an exception to the general hearsay rule. *See* M.R.E. 803(2). The statements made by C.W. upon her arrival at school to the secretary, Ms. Youngblood, and Youngblood's testimony regarding the note and surrounding events during the morning were also "excited utterances" under Rule 803(2). M.R.E. 803(2). Objections to testimony concerning statements made to Sophie Beam, a friend of C.W.'s mother, were sustained when the objections were made. From a review of the record, the lower court was clearly within its discretion by allowing statements into evidence under the appropriate hearsay exceptions set forth in Rule 803(2) and 803(4) and sustaining objections to hearsay testimony where appropriate.

V.

Testimony of L.W.

Simmons' final assignment of error centers around the testimony of L.W., the six-year-old sister of the alleged victim, C.W. Simmons argues that the lower court erroneously allowed the child to testify, despite indication in chambers that the child would not be a good and competent witness and was possibly biased by statements made by her mother. Simmons contends that the hearing conducted by the trial court under Mississippi Rule of Evidence 803(25) was unnecessary since L.W. was not a victim of sexual abuse, and that the court failed to recognize the pertinent issue of whether the child was competent to testify under Rule 601.

The decision regarding the competency of a witness to testify is left to the sound discretion of the lower court. *Bowen v. State,* 607 So. 2d 1159, 1160 (Miss. 1992). Under Rule 601, "every person is competent to be a witness except as restricted by specific restrictions within the rule itself." M.R.E. 601; *Brent v. State,* 632 So. 2d 936, 942 (Miss. 1994). In the case of a child witness, the lower court "should determine 'that the child has ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness.'" *Brent,* 632 So. 2d at 942 (quoting *Mohr v. State,* 584 So. 2d 426, 431 (Miss. 1991)).

The trial judge did not allow the testimony of L.W. under the Rule 803(2) "excited utterance" exception to hearsay until a hearing was conducted in chambers, out of the presence of the jury, to determine whether her testimony was admissible under Rule 803(25). Although not required since L.W. was not a "victim of abuse" under 803(25), the judge made specific findings and stated:

> The Court has read Section 803.25 together with the comment containing I believe twelve factors that the Court is to consider in determining if there is sufficient indicia of reliability. The Court has considered all twelve of those . . . . and the Court hereby finds that the time, content and circumstance of the statement provide substantial indicia of reliability and I will let the child testify, both as to statements and as to her personal observation.

The trial judge then proceeded to announce that he was allowing the statements made by C.W. to L.W. on the school bus shortly after the incident into evidence under Rule 803(2) as an excited utterance and was also going to allow them under Rule 803(25) "since she [L.W.] is a child that may be considered of tender years."

In this hearing, the trial judge questioned L.W. regarding what it means to take an oath and tell the truth, as well as allowed both sides to voir dire her in regard to her testimony outside the presence of the jury. By determining that L.W.'s testimony clearly met the requirements of Rule 803(25), which include a finding of credibility, and by announcing his intention to allow L.W. to testify as to her personal observation, the trial judge clearly indicated by implication his determination that L.W. was a competent witness as is required under Rule 601. *See, e.g., Jethrow v. Jethrow,* 571 So. 2d 270, 273 (Miss. 1990) (where the court held there is no per se prohibition against allowing a child to testify, and the court should determine competency); *Ryan v. State,* 525 So. 2d 799, 801 (Miss. 1988) (where six-year-old child was allowed to testify where court found child had capacity to

understand questions, frame intelligent answers, and speak the truth). This matter was well within his discretion, and we find no basis for reversal of that decision.

**THE JUDGMENT OF THE COAHOMA COUNTY CIRCUIT COURT FINDING ROBERT SIMMONS GUILTY OF THE CRIME OF RAPE OF A FEMALE UNDER THE AGE OF FOURTEEN AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO COAHOMA COUNTY.**

**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**